The plaintiff brought this action to quiet her alleged fee simple title to 50 acres of land in Piney Grove Township in Sampson County, and to remove as clouds thereon specified adverse claims of the defendants to estates or interests therein. All of the defendants except the Fremont Oil Company and the Standard Fertilizer Company suffered judgment to be taken against them without answer. The Fremont Oil Company did not seek a review of the decree rendered against it after the trial in the court below. In consequence, this Court is concerned solely with the conflictive claims of the plaintiff and the Standard Fertilizer Company.
Since no substantial dispute exists with respect to the salient facts provoking this litigation, it will did clarity of understanding to state them at this point. As revealed by all the testimony at the trial, these facts are summarized below.
The plaintiff, Mary F. McCullen, originally owned the 50 acres in question. On 19 February, 1930, she attempted to transfer the property to her husband, Junius McCullen, by the deed pointed out by the first issue. This purported conveyance was unquestionably invalid, however, for the reason that the notary public making the privy examination of the plaintiff did not certify that the deed was "not unreasonable or injurious to her" as required by the statute now embodied in G.S. 52-12 relating to *Page 421 
contracts between husband and wife affecting the corpus of the estate of the wife.
On 31 January, 1941, the plaintiff and her husband, Junius McCullen, executed to their daughter, Maurice Durham, the deed designated in the second issue. This instrument recited that it was based on "$10.00 and other valuable considerations" moving from the grantee to the grantors. It contained the covenants of seizin, right to convey, against encumbrances, and warranty customarily inserted in deeds of bargain and sale, and was sufficient in form to convey the 50 acres in controversy to Maurice Durham in fee simple — absolute. The execution of this deed was acknowledged by the plaintiff and Junius McCullen before Inez Hopkins, a notary public, who made certificate in due form as to the acknowledgment of both of the grantors and as to the private examination of the plaintiff. But the notary did not incorporate in her certificate any conclusion that the instrument was "not unreasonable or injurious" to the plaintiff. Registration of this deed was had seven days after its execution.
On 26 August, 1941, Maurice Durham and her husband, P. P. Durham, executed to Junius McCullen the deed specified in the third issue. This instrument was made and recorded in the manner prescribed by relevant statutes, and recited that it was supported by "$10.00 and other valuable considerations" moving from the grantee to the grantors. It was in tenor a deed of bargain and sale with the usual covenants, and was sufficient in form to vest the land in question in Junius McCullen in fee simple absolute.
In the meantime, certain judgments were entered against Junius McCullen. On 28 September, 1931, I. F. Faison recovered judgment against him for $175.00 with interest and costs, and on 3 April, 1939, the defendant, Standard Fertilizer Company, obtained judgment against him for $265.15 with interest and costs. The last named decree is that designated in the sixth issue. Each of these judgments was docketed in the Superior Court of Sampson County on the day of its rendition.
On 19 October, 1931, an execution upon the Faison judgment was placed in the hands of the Sheriff of Sampson County, who assumed that Junius McCullen had acquired title to the land described in the pleadings under the deed of 19 February, 1930, and summoned appraisers to lay off a portion of such land as the homestead of Junius McCullen. On 6 November, 1931, the appraisers allotted 31 acres of the property to Junius McCullen as his homestead, and declared the other 19 acres excess property subject to sale. The Sheriff then levied the execution on the 19 acres, but for some undisclosed reason proceeded no further.
At a later date, to wit, on 21 August, 1941, Isabelle Faison, the administratrix of I. F. Faison, procured a second execution to be issued upon *Page 422 
the Faison judgment. Junius McCullen thereupon brought an action against such administratrix and C. C. Tart, Sheriff of Sampson County, alleging that he owned the 50 acres in fee simple and that the homestead allotted to him on 6 November, 1931, was valid and subsisting, and praying that the administratrix and the Sheriff be enjoined from selling the 31 acres embraced within the alleged homestead for the satisfaction of the Faison judgment.
Junius McCullen obtained an order of court restraining the sale of the 31 acres in accordance with his prayer, and the Sheriff levied the execution upon the 19 acres which the appraisers had adjudged to be excess property. After due advertisement, the 19 acres were sold under the execution by the Sheriff on 22 September, 1941, to the defendant, the Standard Fertilizer Company, as the highest bidder, for $60.00, which was subsequently applied on the costs and the Faison judgment. The execution sale was held open for ten days under G.S. 45-28, but no advanced bid was received.
According to its recitations, the second execution was returnable "on or before the 30 days of September, 1941." The Sheriff did not prepare, execute, and delivery to the Standard Fertilizer Company his deed for the 19 acres until 25 May, 1942, and did not make formal return to the court as to his proceedings under the execution until 12 June, 1942. Soon thereafter Isabelle Faison. Administratrix of I. F. Faison, assigned any remainder due on the Faison judgment to a trustee for the benefit of Maurice Durham for a consideration of $300.00, which was equal to the principal, interest, and costs due on the judgment after the application of the net proceeds arising from the execution sale.
Junius McCullen died intestate 20 July, 1943, survived by his widow, the plaintiff, and an only child, Maurice Durham, and thereafter, to wit, on 25 April, 1946, the plaintiff commenced the present action.
In her complaint, the plaintiff alleged that her ownership of the 50 acres existed throughout the period set forth above; that Junius McCullen, the judgment debtor, did not have title to such land any time during such period; and that on account of the lack of title of the judgment debtor the Sheriff's deed to the Standard Fertilizer Company for the 19 acres was invalid and the docketed judgment of the Standard Fertilizer Company against Junius McCullen did not constitute a lien upon the residue of the 50 acres. The complaint also alleged that the sale of the 19 acres under execution was not consummated within ten years from the date of rendition of the Faison judgment and that by reason thereof the Sheriff's deed was void. The plaintiff further averred in her complaint that her assertion that she owned the land in controversy in fee and that the claims of the Standard Fertilizer Company to estates or interests therein constituted clouds on her title were not affected adversely by the *Page 423 
deeds of 31 January, 1941, and 26 August, 1941, for the reason that her husband, Junius McCullen, held such title as he acquired under these deeds as a trustee for her benefit. The plaintiff based her contention in this respect upon these allegations: (1) That Maurice Durham paid plaintiff nothing for the deed of 31 January, 1941, and accepted it upon the express agreement that she would hold the 50 acres for the benefit of the plaintiff until a loan was obtained thereon and would then reconvey the property to the plaintiff; and (2) that Maurice Durham executed and delivered the deed of 26 August, 1941, to Junius McCullen before obtaining a loan thereon in breach of her express agreement with the plaintiff and without receiving any consideration from Junius McCullen. While the complaint did not state that the alleged agreement between plaintiff and Maurice Durham rested in parol, such fact did appear when the plaintiff undertook to establish her allegations by evidence at the trial.
In its answer, the Standard Fertilizer Company denied the plaintiff's claim of title to the 50 acres; alleged that the Sheriff's deed vested in it title in fee to the 19 acres and that its docketed judgment of 3 April, 1939, constituted a lien upon the residue of the 50 acres; pleaded certain matters as estoppels in pais against plaintiff and Maurice Durham; and prayed by way of cross-action or counterclaim declarations that the liens of the judgments in controversy had attached to the 50 acres as property of Junius McCullen and that the Sheriff's deed for the 19 acres was valid in all respects.
Both the plaintiff and the Standard Fertilizer Company presented evidence at the trial sufficient to establish the uncontroverted facts heretofore stated. The plaintiff did not offer any other evidence of a material nature, except the oral testimony of Maurice Durham, which the court excluded, tending to show that nothing was paid for the deeds of 31 January, 1941, and 26 August, 1941, and that she accepted the deed of 31 January, 1941, upon a parol agreement that she would hold the 50 acres for the benefit of the plaintiff and reconvey it to the plaintiff after obtaining a loan thereon. The Standard Fertilizer Company presented evidence indicating that the plaintiff was accustomed to make tax returns for her husband, Junius McCullen; that she listed the 50 acres in his name until the execution sale; and that thereafter she returned the residue of 31 acres for taxation as his property.
The court submitted these six issues to the jury: (1) Was the deed dated the 19th day of February, 1930, from Mary F. McCullen to Junius McCullen, recorded in Book 443, at page 368, void for failure to comply with G.S.52-12? (2) Was the deed dated January 31, 1941, from Mary F. McCullen and Junius McCullen to Maurice Durham, recorded in Book 518, at page 43, void for failure to comply with G.S. 52-12? (3) Did the deed dated August 26, 1941, from Maurice Durham and husband, *Page 424 
P. P. Durham, to Junius McCullen, recorded in Book 521, at page 321, convey the title to the lands described in the deed? (4) Was the deed from C. C. Tart, Sheriff, to Standard Fertilizer Company, dated May 25, 1942, and recorded in Book 526, void and does it constitute a cloud on the title to the lands described in it? (5) Is the judgment dated the 31st day of October, 1933, entitled, "Fremont Oil Mills vs. Junius McCullen," docketed in Book 31, at page 145, barred by the ten-year statute of limitations, and does it constitute a cloud on the title to the 50 acre tract or any part of it? (6) Is the judgment of Standard Fertilizer Company against Junius McCullen, docketed in Judgment Docket 35, page 102, a valid and subsisting lien on the residue of said 50 acre tract of land above the excess sold by the Sheriff?
The jury answered the first issue "Yes," the second issue "Yes," the third issue "No," the fourth issue "No," the fifth issue "No," and the sixth issue "Yes."
The court set aside the answers of the jury to the fourth, fifth, and sixth issues "as a matter of law" upon the specified ground that the evidence offered, the admissions in the pleadings, and the answers to the first, second, and third issues showed "that the title to the lands was vested in Mary F. McCullen, and not in Junius McCullen at all times from and after the 19th day of February, 1930," and rendered judgment that the plaintiff owned the entire 50 acres in fee simple free of the adverse claims of the defendants. The Standard Fertilizer Company thereupon appealed to this Court, assigning errors.
The trial court properly rejected the testimony of Maurice Durham under the well established rule of law that an express trust resting in parol cannot be engrafted in favor of the grantor upon a warranty deed conveying to the grantee an absolute and unqualified title in fee. Poston v. Bowen,228 N.C. 202, 44 S.E.2d 881; Loftin v. Kornegay, 225 N.C. 490,35 S.E.2d 418; Briley v. Roberson, 214 N.C. 295, 199 S.E. 73; Penland v.Wells, 201 N.C. 173, 159 S.E. 423; Waddell v. Aycock, 195 N.C. 268,142 S.E. 10; Perry v. Surety Co., 190 N.C. 284, 129 S.E. 721; Blue v.Wilmington, 186 N.C. 321, 119 S.E. 321; Chilton v. Smith, 180 N.C. 472,105 S.E. 1; Campbell v. Sigmon, 170 N.C. 348, 87 S.E. 116, Ann. Cas. 1918 C, 40; Ricks v. Wilson, 154 N.C. 282, 70 S.E. 476. Under the pleadings and proofs here, the plaintiff's standing at the bar is not bettered a whit by the alleged nonpayment of the considerations recited in the deeds of 31 January and 26 August, 1941. *Page 425 
This is true for the reasons stated in the famous case of Gaylord v.Gaylord, 150 N.C. 222, 63 S.E. 1028, where it was said: "The authorities are to the effect that in a deed of this character, giving on its face clear indication that an absolute estate was intended to pass, either by the recital of a valuable consideration or by an express covenant to warrant and defend the title, no trust would be implied or result in favor of the grantor by reason of the circumstance that no consideration was in fact paid." The correctness of this observation was subsequently sanctioned by Walters v. Walters, 172 N.C. 328, 90 S.E. 304, and Jones v. Jones,164 N.C. 320, 80 S.E. 430.
The defendant, Standard Fertilizer Company, excepted to the submission of the second and third issues upon the ground that they were not raised by the pleadings. It expressly waived the right to move for involuntary judgment of nonsuit under G.S. 1-183, but requested the court by written prayers to direct the jury to answer the second and third issues in its favor upon the hypothesis that no evidence had been adduced justifying findings for the plaintiff upon these issues, and saved exceptions to the refusal of the court to instruct the jury in accordance with such prayers. It also reserved exceptions to the judgment upon the assumption that it was not supported by the complaint. We are compelled to adjudge that these several exceptions were well taken.
It is undoubtedly true that a conveyance of her land by a wife to her husband is void if the officer taking the acknowledgment of the wife fails to state in his certificate his conclusions that the conveyance "is not unreasonable or injurious to her" as required by G.S. 52-12. Caldwell v.Blount, 193 N.C. 560, 137 S.E. 578; Barbee v. Bumpass, 191 N.C. 521,132 S.E. 275; Davis v. Bass, 188 N.C. 200, 124 S.E. 566; Foster v. Williams,182 N.C. 632, 109 S.E. 834; Wallin v. Rice, 170 N.C. 417, 89 S.E. 239;Butler v. Butler, 169 N.C. 584, 86 S.E. 507.
It is equally true that the law will not permit the salutary object of the statute to protect married women to be circumvented by indirection, and that a wife may not effectually convey her real estate to a third person to be held in trust by him for the husband or to be conveyed by him to the husband unless the examining or certifying officer incorporates in his certificate his conclusions that the conveyance "is not unreasonable or injurious to the wife." Ingram v. Easley, 227 N.C. 442, 42 S.E.2d 624;Fisher v. Fisher, 217 N.C. 70, 6 S.E.2d 812; Garner v. Horner,191 N.C. 539, 132 S.E. 290; Best v. Utley, 189 N.C. 356,127 S.E. 337.
But G.S. 52-12 and the decisions thereon have no bearing on the deeds of 31 January and 26 August, 1941, because it clearly appears from the pleadings, when rightly construed, and from the testimony, when properly interpreted, that there was neither allegation nor evidence in the cause that the deed of 31 January, 1941, from the plaintiff and *Page 426 
her husband, Junius McCullen, to Maurice Durham was made with any view to accomplishing an indirect conveyance of the plaintiff's property to her husband. Coward v. Coward, 216 N.C. 506, 5 S.E., (2) 537; Davis v.Cockman, 211 N.C. 630, 191 S.E. 322. Indeed, the converse was the case, for both the averments of facts in the complaint and the evidence offered in their support pointed out in an emphatic manner that the deed in question was executed for a diametrically different purpose. The essential allegation and proof were not supplied by the mere circumstance that a third person conveyed to a husband land which had been transferred to such third person by the wife seven months previously.
Notwithstanding these matters, the trial court made the answers of the jury to the second and third issues hinge solely upon whether the plaintiff had established "by the greater weight of the evidence her contention" that the deed of 31 January, 1941, "was void for that it having been conveyed to Mr. McCullen there was a requirement of G.S. 52-12 which was not complied with."
The error in this is manifest. The initial mistake of the trial court lay in submitting the second and third issues to the jury. This was improper for these issues did not arise on the pleadings. G.S., 1-198;Fairmont School v. Bevis, 210 N.C. 50, 185 S.E. 463; Dickens v.Perkins, 134 N.C. 220, 46 S.E. 490. But after submitting these issues to the jury, the court ought to have directed a verdict thereon for the defendant, Standard Fertilizer Company, in accordance with its prayers for instruction because the burden of proof on these issues rested on the plaintiff and there was no evidence to justify a finding thereon in her favor. Timber Co. v. Cozad, 192 N.C. 40, 133 S.E. 173; Thomas v.Morris, 190 N.C. 244, 129 S.E. 623; Board of Education v. Makely,139 N.C. 31, 51 S.E. 784. "The court may always direct a verdict against the party who has the burden of proof if there is no evidence in his favor, as where he fails to introduce any evidence, or if the evidence offered and taken to the true fails to make out a case." McIntosh: North Carolina Practice and Procedure in Civil Cases, section 574. Besides, the judgment in this respect is not supported by the pleadings. Simms v. Sampson,221 N.C. 379, 20 S.E.2d 554; Caudle v. Morris, 160 N.C. 168,76 S.E. 17. It awards the land in controversy to the plaintiff upon a theory entirely independent of that stated in her complaint. Balentine v. Gill,218 N.C. 496, 11 S.E., (2) 456; Green v. Biggs, 167 N.C. 417,83 S.E. 553; McFarland v. Cornwell, 151 N.C. 428, 66 S.E. 454. This the law will not countenance for the reason that the plaintiff must recover, if she recovers at all, upon facts alleged in her complaint. Barron v. Cain,216 N.C. 282, 4 S.E.2d 618; McCollum v. Chisholm, *Page 427 
146 S.E. 160; Simpson v. Simpson, 107 N.C. 552, 12 S.E. 447; Willis v.Branch, 94 N.C. 142; Melvin v. Robinson, 42 N.C. 80.
Ordinarily the errors just noted would warrant the award of a new trial to appellant without any determination as to the rightness of its remaining exceptions. Here, however, the defendant, Standard Fertilizer Company, was not content to rest upon its denial of the plaintiff's title. It expressly waived the privilege of moving for an involuntary judgment of nonsuit under the statute, and asked for a decree upon its cross-action or counterclaim establishing the validity of its claims. The fourth and sixth issues were designed to present this aspect of the case.
The court below set aside the verdict of the jury on these issues as a matter of law and not as a matter of discretion for the specifically designated reason that the admissions in the pleadings, the evidence, and the findings on other issues compelled it to adjudge "that the title to the lands was vested in Mary F. McCullen and not in Junius McCullen at all times from and after the 19th day of February, 1930." This necessitates consideration of the assignments of error predicated on the denial of the appellant's motion for judgment in its favor on the verdict, and the action of the court in setting aside the findings of the jury on the fourth and sixth issues. Akin v. Bank, 227 N.C. 453, 42 S.E., (2) 518.
When a judgment for the payment of money is duly docketed in the Superior Court of a county, it becomes a lien on the real property in such county owned by the judgment debtor at the time of the docketing or acquired by him "at any time thereafter, for ten years from the date of the rendition of the judgment." G.S. 1-234; Durham v. Pollard, 219 N.C. 750, 14 S.E., (2) 818; Thompson v. Avery County, 216 N.C. 405, 5 S.E., (2) 146; Keel v. Bailey, 214 N.C. 159, 198 S.E. 654. Since the plaintiff was unable to establish her allegation that Junius McCullen took title under the deed of 26 August, 1941, in the capacity of a trustee for her, it inevitably followed upon the record here presented that Junius McCullen was the absolute owner of the property in controversy under such deed, and that the lien of the Faison judgment and that of the judgment of the Standard Fertilizer Company attached to such property at the moment that the title vested in Junius McCullen. Trust Co. v. Sterchie, 169 N.C. 21,85 S.E. 40; Moore v. Jordan, 117 N.C. 86, 23 S.E. 259. Therefore, the trial court erred in vacating the finding of the jury on the sixth issue as a matter of law, and in refusing to adjudge that the judgment of the Standard Fertilizer Company constitutes a lien upon the property in issue.
The plaintiff asserts, however, that the action of the court in setting aside the verdict on the fourth issue must be sustained even if title to the 50 acres did vest in Junius McCullen under the deed of 26 August, 1941, on the ground that the execution sale was not consummated until the *Page 428 
enforcement of the Faison judgment had become barred by the lapse of time. The appellant counters this contention with the proposition that the plaintiff ought not to be permitted to question the validity of the sheriff's deed because she does not claim the 19 acres covered by such instrument through or under the judgment debtor. If it be conceded that the argument underlying this position be sound, still it has no relevancy to the cross-action or counterclaim of the Standard Fertilizer Company, which is necessarily based on the theory that the sheriff's deed is operative against the plaintiff and her daughter, Maurice Durham, even in their respective capacities as widow and heir of the judgment debtor.
It is settled law that "an officer making a sale under execution acts solely by virtue of the statutory authority conferred, which must be strictly pursued; and where such power does not exist nothing passes by the sale." 33 C. J. S., Executions, section 199.
Our statutes provide, in substance, that with the exception of the lien of a judgment upon a homestead duly allotted, the lien of a judgment for the payment of money expires at the end of ten years from the date of its rendition, and that no execution may be issued thereon after the lien is gone. G.S. 1-234; G.S. 1-306; Exum v. Railroad, 222 N.C. 222, 22 S.E. (2) 424; Lupton v. Edmundson, 220 N.C. 188, 16 S.E., (2) 840. These statutes clearly manifest the legislative intent that the process to enforce the judgment lien and to render it effectual must be completed by a sale within the prescribed time. Cheshire v. Drake, 223 N.C. 577,27 S.E.2d 627. Hence, it follows "that the lien upon lands of a docketed judgment is lost by the lapse of ten years from the date of the docketing, and this notwithstanding execution was begun, but not completed, before the expiration of the ten years. The only office of an execution is to enforce the lien of the judgment by a sale of the lands, and this must be done before the lien is lost. The execution adds nothing by way of prolongation to the life of the lien." Hyman v. Jones, 205 N.C. 266, 171 S.E. 103.
We must now apply these principles to the case at bar. The land described in the sheriff's deed was exposed to sale on 22 September, 1941, under execution issued on the Faison judgment, and the Standard Fertilizer Company thereupon became the last and highest bidder for it. This event took place within ten years from 28 September, 1931, the date of the rendition of the Faison judgment. But under the pertinent statute now embodied in G.S. 45-28 the sale under execution could "not be deemed to be closed under ten days" in order to afford opportunity for an increase in the bid. C. S. section 2591; P. L. 1933, C. 482. During the interval specified by the statute, the Standard Fertilizer Company had no rights in law or in equity by reason of its bid. It occupied the status of a proposed purchaser or preferred bidder, whose offer to purchase or bid the *Page 429 
sheriff was precluded by law from accepting during the period allowed by statute for an increase in the bid. Building Loan Assn. v. Black, 215 N.C. 400, 2 S.E., (2) 6; Richmond County v. Simmons,209 N.C. 250, 183 S.E. 282. The tenth day after 22 September, 1941, the date the property was exposed for sale at public auction, was 2 October, 1941, which was the earliest possible date that the sale under execution could have been deemed closed, or consummated, and 2 October, 1941, was more than ten years after 28 September, 1931, the date of rendition of the Faison judgment. Thus, the sale of the 19 acres under the execution was not completed during the life of the lien of the Faison judgment, and the sheriff's deed passed nothing to the Standard Fertilizer Company because his statutory authority to enforce the lien of the judgment by a sale of the land ended the instant the judgment lien expired. It follows that the court did not err in setting aside the finding on the fourth issue and in adjudging that the sheriff's deed was invalid.
This holding does not conflict with the authorities indicating that mere delay on the part of the sheriff in executing his deed or in making formal return of his proceedings does not adversely affect the rights of the purchaser at a sale under execution. 33 C. J. S., Executions, Section 270, 318; Freeman on Executions (3d Ed.), Vol. 3, section 328. Likewise, it does not run counter to the general rule that a sheriff's deed made in pursuance of an execution sale operates from the day of the sale and not from the date of the deed. Dobson v. Murphy, 18 N.C. 586; Cowles v. Coffey,88 N.C. 340. The Standard Fertilizer Company never acquired any right to a deed from the sheriff because in legal contemplation there was no sale under execution in the case at bar.
In closing, it is observed that there is no basis for the contention of the appellant that the plaintiff and her daughter, Maurice Durham, were estopped by their acts to question the validity of the sheriff's deed on the ground that the sale under execution was not consummated during the life of the Faison judgment. When viewed in the light most favorable to appellant, any such acts prior to the sale amounted at most to a representation that title was then vested in Junius McCullen. Manifestly, conduct subsequent to the sale did not induce the appellant to become a bidder at the sale, 31 C. J. S., Estoppel, section 71.
The errors of the trial court do not required a retrial of the issues joined between the plaintiff and the appellant for the determinative facts have been established by the answer to the sixth issue and the admissions in the pleadings. For this reason, the cause is remanded to the trial court with direction that it modify its decree so as to adjudge that the judgment which the Standard Fertilizer Company recovered against Junius McCullen on 3 April, 1939, constitutes a lien on the 50 acres described in the pleadings. As thus modified, the judgment rendered below is affirmed. *Page 430 
This course fully protects the rights of the Standard Fertilizer Company, and does not disturb the judgment as to the other defendants.
Error and remanded.